CASE 103—ACTION BY CLARA R. BARNES' ADMR. AGAINST LOUISVILLE & EVANSVILLE MAIL CO. FOR CAUSING DEATH OF PLAINTIFF'S INTESTATE.—MARCH 16.

# Louisville & Evansville Mail Co. v. Barnes' Admr.

APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

CARRIERS—NEGLIGENCE—EVIDENCE—INSTRUCTIONS—CONCURRENT NEGLIGENCE OF CARRIER AND ANOTHER—JOINT TORT FEASORS—RELEASE OF ONE—EFFECT.

Held:  1. In an action for the death of plaintiff's intestate, who had fallen between a barge and a wharfboat when alighting from the barge, many witnesses testified that just at the moment that deceased was making her step from the barge to the wharfboat a vessel belonging to defendant made a landing at the wharf-

boat, and struck it with such force as to cause the separation of the wharfboat and barge, and that the landing was an unusual, unsafe, and dangerous one. HELD, that it was proper to refuse a motion for a peremptory instruction in favor of defendant.

2. Where, in an action for negligent death, there was no evidence showing any contributory negligence on the part of deceased defendant could not complain of the court's instructions on contributory negligence, since a failure to give any instructions would not have been error.

3. A carrier is liable for injuries to a·passenger, though the injuries were due to the concurring negligence of the carrier and another.

4. The acceptance by one, who has a cause of action against two joint tort feasors, of a sum of money from one of them in part satisfaction and in consideration of a release of the tort feasor making the payment, does not preclude recovery against the other.

POWERS & ANDERSON, ATTORNEYS FOR APPELLANT.

### CLASSIFICATION OF POINTS AND AUTHORITIES.

1. The petition does not state a cause of action against appellant.

The allegations on which appellee relies for his cause of action against appellant are these:

"The said Marsden Company landed its said boat and barges at the wharfboat . . . for the purpose of discharging and letting off its passengers including plaintiff's intestate, and the Louisville & Evansville Mail Company also landed one of its steamboats at said wharfboat in a careless and negligent manner and carelessly and negligently run its said steamboat against said wharfboat with great force so as to pull and·throw said wharfboat away from the said boat and barges of the defendant Marsden Company, plaintiff's intestate being in the act of leaving said boat and barges of said Marsden Company and alighting therefrom, that being her destination, and said drowning was caused by the joint and concurrent negligence of the Marsden Company and appellant."

There is nothing in the petition to show that appellee's intestate was stepping towards or on to or standing on the wharfboat which appellee alleges was struck with great force by appellant. To say that the boat landed at the wharfboat for the purpose of discharging its passengers does not necessarily mean

that the passengers were discharged on to, or are stepping to-wards the wharfboat. Louisville & Cincinnati R. R. Co. v. Case's Admr., 9 Bush, 728; Chiles v. Drake, 2 Metcalf, 149; Louisville & Portland Canal Co. v. Murphy Admr., 9 Bush, 527; Webster's Unabridged Dictionary, definition of the word "at."

2. The court should have peremptorily instructed the jury to find for appellant at the conclusion of the evidence for appellee. First, because appellee's intestate was a trespasser. She was attempting to disembark on to the wharfboat at an unusual, an unsafe, and an unprovided place, and appellant was under no duty to keep a lookout for her, or to anticipate her presence on the forward end of the wharboat. Thompson on Negligence, vol. 1, sec. 990, p. 908; Thompson on Negligence, vol. 1, sec. 1006, p. 923; Lackat v. Lutz, 94 Ky., 287; Oatts v. C. N. O. & T. P. R. R. Co., 15 Ky. Law Rep., 87; L. & N. R. R. Co. v. Kellem, 14 Ky. Law Rep., 734; Woodyard v. Ky. C. R. R. Co., 12 Ky. Law Rep., 800; Illinois Cent. R. R. Co. v. Dick, 91 Ky., 434; Gresham v. L. & N. R. R. Co., 15 Ky. Law Rep., 599; McDermott v. Ky. C. R. R. Co., 93 Ky., 408; Shackelford v. L. & N. R. R., 84 Ky., 43; L. & N. R. R. Co. v. Cox. 8 Ky. Law Rep., 961; Vertress v. Administrator Newport News, &c. Co., 95 Ky., 314; Thompson on Negligence, vol. 1, sec. 239, p. 228; Thompson on Negligence, sec. 238, p. 227.

Because the proximate cause of the accident was the failure of the Marsden Company to provide gang planks or stages for its passengers to walk upon from the barges to the wharf-boat. Thompson on Negligence, vol. 1, sec. 50, p. 54; Setter's Admr v. City of Maysville, 69 S. W. R., 1074; Martin's Admr. v. L. & N. R. R. Co., 95 Ky., 612; Shields v. L. & N. R. R. Co., 97 Ky., 103; L. & N. R. R. Co. v. Webb, 99 Ky., 332; Illinois Cent. R. R. Co. v. Mizell, 100 Ky., 235; Franke v. Head, 19 Ky. Law Rep., 1128; Louisville Gas Co. v. Kaufman, Straus & Co., 20 Ky. Law Rep., 1069.

3. The instructions given by the court were erroneous.

(a) In the first instruction the court failed to submit to the jury the question of appellant's negligence, and the instruction did not follow the complaint of the petition. Sandy River Cannel Coal Company v. Caudill, 60 S. W. R., 180.

(b) The court by the use of the words "in whole or in part" instructed the jury that appellant was liable if guilty of the slightest negligence. The law of comparative negligence does not obtain in this State. Sandy River Cannel Coal Co. v. Caudill, 60 S. W. R., 180.

Louisville & Evansville Mail Co. v. Barnes' Admr.

(c) The court failed to instruct the jury what their finding should be, if the appellee's intestate herself was guilty of negligence, but for which the accident would not have happened; and the court further failed to instruct the jury what their finding should be if the Marsden Company was guilty of negligence but for which the accident would not have happened.

The questions of contributory negligence and of the proximate cause of the accident, were thus taken from the jury. Paducah & Memphis R. R. Co. v. Hoehl, 12 Bush, p. 41; Jacob's Admr. v. L. & N. R. R. Co., 10 Bush, p. 267; L. & N. R. R. Co. v. Wolf, 80 Ky., p. 82; Johnson's Admr v. L. & N. R. R. Co., 91 Ky., p. 651; Ill. Cent. R. R. Co. v. Dick, 91 Ky., p. 434; Ky. Hotel Co. v. Camp, 97 Ky, p 424.

(d) The court should have submitted to the jury the question whether or not the appellee accepted the promise of the Marsden Company to pay $1,000 in compromise settlement of the suit against it, because if the promise to pay was accepted by appellee, it was a present satisfaction, and such a promise that the appellee by suit could have compelled the Marsden Company to fulfill. Ellis v. Bitzer, 15 A. M. Dec., 534.

(e) The court submitted to the jury the question as to whether or not the proposition of the Marsden Company to pay $1,000 in settlement of the suit had been declined when there was no claim by either appellee or appellant that such a proposition had been declined. The court should have instructed the jury on the issues involved, in the suit. Sandy River Cannel Coal Co. v. Caudill, 60 S. W. R., 180.

5. There can be but one satisfaction for the same injury and the acceptance of the promise made by the Marsden Company, to pay appellee $1,000 was a present satisfaction, which, when followed by the dismissal of the suit as to the Marsden Company, was a release as to the Marsden Company, and therefore a release as to appellant. Riley v. McGee, et al, 1 A. K. Marshall, 432; Ellis v. Bitzer, 15 Am. Dec., 534, 2 Co. Litt., sec. 376; Bacon's Abr. tit. "Release" B.; Patridge v. Emson (1597), Noy, 62; Cocks v. Jennor, Hobart, 66; Kiffin v. Willis (1695), 4 Mod., 380; Ellis v. Ellisson, 50 Wis., 138, 36 Am. Rep., 830, 6 N. W. R., 518; Urton v. Price, 57 Cal., 270; Rogers v. Cox, 66 N. J. L., 432, 50 Atl., 143; Brogan v. Hanan, 55 App. Div. 92, 66 N. Y. Supp., 1066; Brown v. Marsh, 7 Vt., 320; Eastman v. Grant, 34 Vt., 390; Long v. Long, 57 Iowa, 497, 10 N. W. R., 875; Aldrich v. Parnell, 147 Mass., 409, 18 N. E. R., 170; Stone v. Dickinson, 5 Allen, 29, 81 Am. Dec., 727; Stanley v. Lehy, 87 Ill. App., 467; Ayer v. Ashmead, 31 Conn., 447, 83 Am. Dec., 154; Donaldson v. Carmichael, 102 Ga.,

Louisville & Evansville Mail Co. v. Barnes' Admr.

40, 29 S. E. Rep., 135; Gross v. Allison, 136 Mass., 503; Brown v. Cambridge, 3 Allen, 474; Tompkins v. Clay Street Hill Co., 66 Cal., 4 Pac., 1165; Bailey v. Berry (Ohio), 8 Am. L. Reg., N. S., 270; Snyder v. Witt, 42 S. W. R., 441; Wardell v. Mc-Connell, 25 Neb., 558, 41 N. W. R., 548; Gould v. Gould, 4 N. H., 173; Brown v. Kencheloe, 3 Coldw., 162; Chetwood v. California National · Bank, 113 Cal., 414, 45 Pac. R., 704; Schramm v. Brooklyn Heights R. R. Co., 35 App. Div., 334, 54 N. Y. Supp., 945; Ransom v. Farish, 4 Cal., 386; Gilpatrick v. Hunter, 24 Me., 18, 41 Am. Dec., 370; Johnson v. New York, 71 App. Div., 561, 76 N. Y. Supp., 119; Seither v. Philadelphia Traction Co., 4 L. R. A., 54; Ruble v. Turner, 2 Hen. and M., 38; Mitchell v. Allen, 25 Hun., 543; Smith v. Consolidated Gas Co., 36 Misc., 131, 72 N. Y., Supp., 1084; Williams v. Le-Bar, 141 Pa., 139, 21 Atl., 525; Pugh v. Chesapeake & Ohio Ry. Co., 101 Ky., 77; Abb. v. Northern Pacific Ry. Co., 68 Pac. Rep., 954; Sellards v. Zomes, 5th Bush, 90; Kentucky Statutes, sec. 12; Central Passenger Co. v. Kuhn, 86 Ky., 579; Bonte v. Postel, 58 S. W. R., 536.

7. Even if the offer and promise of the Marsden Company to pay $1,000 was not accepted at the time the suit was dismissed as to it, the payment and acceptance of the $1,000, while a motion for a new trial was pending against appellant was an election by appellee to accept the $1,000 in settlement of the damages to the estate of his intestate and was a cancellation and satisfaction of the judgment rendered against appellant. Pugh v. C. & O. Ry. Co., 101 Ky., 77; United Society of Shakers v. Underwood, &c., 11 Bush, 265; Gross v. Penn. P. & B. R. R. Co., 65 Hun., 191 20 N. Y. Supp., 2 G.; Lewy v. Fox, 22 Jones & S., 397; Hubbard v. St. L. & M. R. R. Co., 72 S. W., 1073; Dulaney v. Buffum, 73 S. W., 125.

GEORGE W. JOLLY AND W. T. OWEN, FOR APPELLEE.

1. As to the failure of the court to instruct the jury on the subject of contributory negligence, there was no error, (1) Because there is nothing in the evidence to authorize such an instruction, (2) Even if there was any color of evidence of contributory negligence, that question is sufficiently submitted to the jury in the first instruction, for the right of appellee to recover all is based, in part, on the condition that his intestate, "without fault or negligence on her part contributing thereto, was drowned."

2. There is abundant evidence showing culpable negligence on the part of the servants of appellant, and there can be no

doubt that their act in violently running appellant's boat against the wharfboat was the proximate cause of the death of appellee's intestate.

3. The fact that appellee accepted $1,000 from the Marsden Company as a partial payment on the cause of action sued on herein, did not release this appellant from liability for the death of appellee's intestate, as the Marsden Company and appellant were joint tort-feasors in causing her death, and the release of one does not excuse the other.

4. This question having been submitted to the jury in this case, they in a separate general verdict, found, "We of the jury find that the Marsden Company has not paid $1,000 to the plaintiff in satisfaction of plaintiff's claim asserted in this action.

### AUTHORITIES CITED.

United Society of Shakers v. Underwood, 11 Bush, 265; Lovejoy v. Murray, 3 Wallace, 1; Ellis v. Essin, 50 Wis., 138 (36 Am. Rep., 830); Snow v. Chandler, 10 N. H., 92; McCrillis v. Hawes, 38 Me., 568; Spencer v. Williams, 2 Vt., 209; Chamberlin v. Murphy, 41 Vt., 110; Sloan v. Herrick, 49 Vt., 328; Matthews v. Chicopee Co., 3 Robt., 712; Bloss v. Plymale, 3 W. Va., 393; Shaw v. Pratt, 22 Pick, 307; Pond v. Williams, 1 Gray, 630-636; Bank v. Messenger, 9 Cow., 37; Line v. Nelson, 38 N. J. L., 358; Irwin v. Melbank, 15 Abb. Pr. (N. S.), 378; Solly v. Forbes, 6 Eng. Com. Law, 11; Thompson v. Lack, 54 Id., 551; Bank v. Curtess, 37 Barb, 319; Gunther v. Lee, 45 Md., 60-67 (S. C., 24 Am. Rep., 504); Sellard v. Zomes, 5 Bush, 90; Cooley on Torts, top. pp. 160, 161 and notes; Russell v. McCall, 141 N. Y., 437 (38 Am. St. Rep., 814); Shearman & Redfield on Negligence, sec. 31; Louisville & Cin. Packet Co. v. Mulligan, 77 S. W., 704; Danville, &c. v. Stewart, 59 Ky., 119; Louisville, &c. R. R. Co. v. Case's Admr., 72 Ky., 728, 7 Am. & Eng. Ency. of Law, 446, and cases cited.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

This appeal is from a judgment of the Daviess circuit court, rendered at its October term, 1902, against the appellant, Louisville & Evansville Mail Company, and in favor of John

T. Barnes, administrator of Clara R. Barnes, deceased. The judgment was for $2,000.

The facts of the case, as they appear of record, are, in substance, as follows: About 11:30 o'clock on the night of the 12th of July, 1901, Clara R. Barnes lost her life by drowning in the Ohio river at Owensboro, Ky. The young lady, together with about 400 other persons, embarked early in the night on an excursion boat of the Marsden Company called the "Fawn," with two barges attached, for a pleasure trip up the Ohio river to Rockport, Ind., and return. On the return, and for the purpose of disembarking its passengers, this steamer landed at Owensboro, Ky., at the upper end of appellant's wharfboat, the barges lying "head on" at the forward end of the wharfboat. The proof of appellee showed that the barges were properly and securely fastened to the wharfboat with a rope attaching the Fawn to the bank or shore to keep her from swinging out into the stream. In this situation there was no space between the barges and the wharfboat. The passengers left the barges by stepping down 15 or 16 inches onto the front of the wharfboat. About 50 of the passengers had disembarked, when the deceased, Clara Barnes, in attempting to make this step from the barge to the wharfboat, fell between them, and was drowned. According to appellee's proof, this separation was caused by one of the boats of appellant coming in to the wharfboat "head on," striking the wharfboat at the upper end, thereby forcing the separation at the place and the time she made her step; that this was an improper and negligent landing of the appellant's boat; that those in charge of it saw the situation of the boat and barges of the Marsden Company and the disembarkation of its passengers. On the other hand, appellant claims that it did not make its landing in that manner; that

it made a proper, easy, and safe landing, and did not cause the separation of the barges and the wharfboat; that the separation was produced from some other cause; that in fact the deceased fell between the two and lost her life before appellant's boat made its landing, or even touched the wharfboat; that the deceased lost her life by reason of the negligence of the Marsden Company in making an improper landing at the wharfboat, by failure of the Marsden Company to use a stage plank for the use of the passengers to pass from the barge to the boat, or by the contributory negligence of the deceased herself in not using ordinary care for her own safety. Appellee sued both companies, charging joint and concurring negligence, but just before the trial dismissed, without prejudice, his petition against the Marsden Company, and proceeded with the trial against the appellant.

The appellant complains that the court erred in overruling its motion for a peremptory injunction to the jury at the conclusion of the evidence. In this the appellant is mistaken. There was proof introduced by many witnesses that the landing made by the appellant with its boat was a very unusual, unsafe, and dangerous one, and that the force with which it struck the upper end of the wharfboat forced the separation of the boat and barge just at the moment the deceased was making her step from the one to the other, and caused her death.

The appellant complains that the court failed to give a proper instruction on the question of contributory negligence on the part of the deceased. There is not anything in the record showing the slightest neglect or want of care on the part of the deceased by which she lost her life, and, if the court had failed to give any instruction on this point, it would not have been prejudicial to

appellant, as there was no evidence upon which to base
it. Appellant also complains of the following words in the
first instruction: "And if they shall further believe that
said drowning was caused by the negligence in whole or in
part of the defendant Louisville & Evansville Mail Com-
pany's officers or servants," etc. In the case of Louisville
& Cincinnati Packet Co. v. Mulligan (25 R., 1287), 77 S. W.,
704, the court in discussing an instruction with similar words
embodied in it, said: "Appellee, being a passenger on the
White Dove, and having no control over the boat, may re-
cover of the Cincinnati, although those in charge of the White
Dove were more negligent than those in charge of the Cin-
cinnati; for the negligence of a carrier is not imputed to a
passenger who is injured by the concurrent negligence of the
carrier and another, and he may recover against both. Dan-
ville, etc., Co v.. Stewart, 59 Ky., 119; Louisville, etc., R.
R. Co. v. Case's Adm'r, 72 Ky., 728; 7 Am. & Eng. Enc. of
Law, 446, and cases cited. . . . The court, by its instruc-
tions, told the jury that both boats were governed by the
same rules and regulations. . . . Also that appellant
was not liable to appellee unless the plaintiff was injured
by reason of the negligence in whole or in part of the officers
in charge of the Cincinnati." The court in that case approved
this instruction.

The most serious question involved in this case grows out
of an issue made by an amended answer which was filed
during the trial in the lower court, in which it was, in sub-
stance, alleged that the appellee had, in consideration of $1,000
paid to him by the Marsden Company, dismissed his action
against the Marsden Company, this appellant's joint tort
feasor, and had accepted the $1,000 in satisfaction of his cause
of action; that he had no further right to prosecute his ac-

tion against this appellant. This was traversed by the appellee, and the proof introduced upon this question showed the following state of facts: The president of the Marsden Company, prior to the convening of the court when the trial was had, desired to avoid further litigation of the matter, and authorized the attorneys for the Marsden Company to endeavor to bring about a settlement and compromise of the litigation in so far as it was concerned, and authorized them to pay as much as $1,000, if it took that much, to effect a compromise, and placed this money in a bank subject to the order of its attorneys. These attorneys approached the attorneys for appellee, and made a proposition for a compromise, and eventually offered the $1,000. The attorneys for the appellee refused, stating that, while they believed that the Marsden Company was possibly not liable for any negligence—at least they believed its negligence was not as great as that of appellant company's—yet they were afraid, if they accepted this compromise settlement, appellee's right to prosecute the action against the appellant, their joint tort feasor, would be barred. Thus matters stood until six or seven days after verdict and judgment against appellant, when the attorneys for the Marsden Company paid the attorneys for the appellee this money, and they immediately entered a credit upon the judgment against the appellant for this amount of $1,000. We are convinced from all the proof in that case that there was an understanding between the attorneys for the Marsden Company and the appellee's attorneys, prior to the trial, that this amount was to be offered and accepted, and the Marsden Company was to be released, and the case dismissed against it, and that the dismissal was in conformity with this understanding. The question to be determined is whether this operated as a release of the

appellant, it being a joint tort feasor. Our opinion is that, if the appellee had accepted this $1,000 in satisfaction of his cause of action or claim for damages, then it would have operated as a release and a bar to any other proceeding against appellant on account thereof. But it is shown by the proof without contradiction that it was accepted as only part satisfaction, and a release of the Marsden Company, but not in satisfaction of his cause of action and claim for damages. It is a universal rule of law that joint tort feasors are jointly and severally liable to the injured party. He may sue any one or all, at his election; but when he once receives satisfaction for the injury done him from one or more of the tort feasors, he is barred from proceeding against the other joint tort feasors. This is upon the idea that he is only entitled to one satisfaction, and to avoid his getting more than one compensation for his injury. There are authorities in many States which hold that any satisfaction from and a release of one joint tort feasor releases all. But on a close investigation of these cases, or at least the most of them, it will be found that they were cases where the proof showed that the injured parties had received full satisfaction for their injuries or cause of action. Such are the cases of Dulaney v. Buffum (Mo. Sup.), 73 S. W., 125; Hubbard v St. L. & M. R. R. C. (Mo. Sup.), 72 S. W., 1073; Brown v. City of Cambridge, 3 Allen, 474; Urton v. Price, 57 Cal., 270; Donaldson v. Carmichael, 102 Ga., 40, 29 S. E., 135; and other cases cited in these opinions. The sole reason given in these opinions for the rule as stated is that it is to prevent the injured party from receiving more than one compensation or satisfaction for his injury. We are unable to understand why a part satisfaction and release of one tort feasor can be considered as complete satisfaction of his

claim for damages, and operate as a bar to his cause of action against the other tort feasors. There can be no good reason for this. The collection of a part satisfaction from one tort feasor is a benefit to the others. Under the law there is no right of contribution existing between tort feasors. The law does not look with favor upon wrongdoers, and they are unlike obligors in an ordinary contract,, where the right of contrubution is given. The law ought not to be that a release of one tort feasor, by his making a partial satisfaction for the wrong done, should operate as a release of the other wrongdoers. The law looks with favor upon compromises and settlements. It is not the intention of the law to force people into litigation and prevent settlements out of court. To uphold the rule contended for by appellant, such a result would follow. If ten persons commit a joint tort, and injure a person to the extent of $1,000, and if nine of them recognize that fact, and were willing to pay $100 each for the purpose of remunerating the injured party and to avoid the expense and annoyance of litigation, and the tenth man refused to pay his $100, according to appellant the injured party could not accept the $900 in part satisfaction and sue the stubborn tenth man. He would plead the settlement as a satisfaction and a bar. Such a construction of the law would be unreasonable and unjust. All that such a person should be allowed to take advantage of would be to require that in any judgment that should be rendered against him it should be rendered for one satisfaction of the claim for damages, less any sums that might have been paid by his joint tort feasors as a partial satisfaction.

In the case of Ellis v. Esson, etc., 50 Wis., 152, 6 N. W., 523, 36 Am. Rep., 830, the court said: "The contract set up in this case shows that the plaintiff did not receive the

$200 from Comstock in satisfaction or as a full compensation for the injury he had sustained by the trespass, and that it was not the intention to release the other joint trespassers from liability for the trespass. The plaintiff's agreement not to sue Comstock for the trespass, under the circumstances disclosed by the evidence in this case, does not, therefore, discharge the other joint trespassers, except *pro tanto*. The court below properly rendered judgment in favor of the plaintiff for the damages he had sustained by reason of the trespass, less the sum of $200 received of Comstock. This rule is, we think, supported by the great weight of authority as will be seen by an examination of the large number of authorities cited. Snow v. Chandler, 10 N. H., 92, 34 Am. Dec., 140; McCrillis v. Hawes, 38 Me., 568; Spencer v. Williams, 2 Vt., 209, 19 Am. Dec., 711; Chamberlin v. Murphy, 41 Vt., 110; Sloan v. Herrick, 49 Vt., 328; Matthews v. Chicopee Mfg. Co., 3 Rob., (N. Y.), 712; Bloss v. Plymale, 3 W. Va., 393, 100 Am. Dec., 752; Shaw v. Pratt. 22 Pick., 307; Pond v. Williams, 1 Gray, 630-636; Catskill Bank v. Messenger, 9 Cow., 37; Line & Nelson v. Nelson & Smalley, 38 N. J. Law, 358; Rowe v. Thompson, 15 Abb. Prac., 378; 6 Eng. Com. Law, 11; 54 Eng. Com. Law, 551; Merchants' Bank v. Curtiss, 37 Barb., 319; and Gunther v. Lee, 45 Md., 60, 24 Am. Rep., 504."

Again, in the same case, the court said: "Certainly the receipt of a partial satisfaction from one of two joint tort feasors is no injury to the other who is afterwards sued for the trespass. On the other hand, it is to his benefit, as he has the advantage of what was paid by his associate in the wrong in reducing the judgment against him. The party injured is under no duty to the joint wrongdoer to proceed at all against his associate, and his refusal to pro-

ceed against him is no ground of defense. As it is wholly optional with the injured party to proceed against one or two wrongdoers for the whole of his damages, there is no equity in holding that, because he has received a part satisfaction for his injury from the one not proceeded against upon an agreement not to sue him for the wrong, the other may set up such receipt as a complete defense to the action. He is benefited, and not injured, by such proceeding."

The case of Snow v. Chandler, 10 N. H., 92, 34 Am. Dec., 140, was one where Chandler and one George Holt committed an assault and battery upon Snow. Holt, being a minor, applied to one White to procure a settlement with Snow for the injury he had received. Snow accepted $20 as part satisfaction of his cause of action and injury, and agreed to look to Chandler for the balance of his compensation. Snow sued Chandler, and this settlement with Holt was pleaded in bar of the prosecution of the action, claiming that the release of Holt released him. The court said: "The evidence is that at the time of receiving the money from Holt the plaintiff declared that he would not settle with Chandler for $500. The substance of the arrangement betwixt the plaintiff and Holt seems to have been this: That the plaintiff was willing to receive a small portion of the damage from Holt, either for the reason that he conceived him to be less to blame than the defendant, or that he was less able to pay his proportion of the damage; and on condition of receiving this sum the plaintiff engaged to pursue the defendant for the remainder of his claim. It is clear that the sum paid was not received in satisfaction of the damage, but only in part satisfaction; and the fact that it was coupled with the engagement not to sue Holt does not alter the case. It is still but a part satisfaction of the damage, and the plaintiff may sue or omit

to sue whom he pleases, by contract or otherwise. The other trespasser has no equitable or legal claim to prevent such arrangement. He remains liable for the whole damage until satisfaction is made. If 'the individual receiving the injury sees fit to visit the penalty upon any one guilty individual rather than another, such individual has no right to complain. It is part of the necessary liability that he incurs in committing the trespass, and should serve to deter him from such wrongful acts. 'At the same time any partial payment by a co-trespasser avails so far for his benefit. Such was the ruling in this case. To this extent the defendant can avail himself of plaintiff's arrangement with his co-trespasser, but there was nothing in that contract which constitutes a bar to this suit."

The case of Lovejoy v. Murray, 3 Wall., 17, 18 L. Ed., 129, was one in which Murray had recovered judgment on a claim for damages for several thousand dollars, and had received $800 thereon. He then sued the other joint wrongdoers, Lovejoy, etc., and they pleaded the judgment and Murray's acceptance of $800 thereon in bar of his right to prosecute the action against them. The case was appealed to the Supreme Court of the United States. In an opinion by Justice Miller the court said: "But in all such cases, what has the defendant in such second suit done to discharge himself upon the obligation which the law imposes upon him to make compensation? His liablity must remain, in morals and on principle, until he does this. The judgment against his co-trespasser does not affect him so as to release him on any equitable consideration. It may be said that neither does the satisfaction by his co-trespasser, or a release to his co-trespasser, do this; and that is true. But when the plaintiff has accepted satisfaction in full for the injury done to

him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages. But it is not easy to see how he is so affected until he has received full satisfaction, or that which the law must consider as such. We are therefore of opinion that nothing short of satisfaction, or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not a party to the first judgment."

In the case of Bloss v. Plymale and Others, 3 W. Va., 409, 100 Am. Dec., 752, the court said: "As the cause of action is against all the joint trespassers, the plaintiff may sue all or either of them, at his election, and he is entitled to full satisfaction, but he is entitled to but one satisfaction. So, where there are different findings in the same verdict when all the trespassers are sued, the successful party must choose *de melioribus damnis*. He can not claim to collect all. It follows, then, if the damages are satisfied in part by payment or compromise with some of the defendants, the plaintiff may still proceed against those who remain in the record. And in such case it was but right and proper that the jury should deduct in their finding whatever the sum the plaintiff had already received on account of the alleged trespasses from any of the joint parties afterwards dismissed. This would be the just application of the rule that there can not be a double remuneration for the same wrong."

We have been unable to find where the precise question before us has been considered or passed upon by this court, but the trend of the cases seems to support the conclusion at which we have arrived. The two cases of Bullock v. Beemis, 1 A. K. Marsh., 433, and Calmes v. Ament, Id., 458,

in effect decide that in suits on tort, where several are liable, nothing short of a full satisfaction from one will be a bar to further proceedings against the other joint tort feasors. In the case of the United Society of Shakers v. Underwood, etc., 11 Bush, 272, 21 Am. Rep., 214, this court quoted with approval the quotation above from Lovejoy v. Murray, *supra,* and then said: "It thus appears that, while the plaintiff may maintain separate actions and recover separate judgments against joint trespassers, and may elect to take the largest sum assessed, or to proceed against the solvent defendant, or, in case no one of them is able or can be compelled to pay the whole of the judgment rendered against him, may accept part satisfaction from one and still look to the others for such balance as may be necessary to give him full legal compensation for the wrong suffered, yet ordinarily, when he has made his election, he will be concluded by it. The collection of one judgment extinguishes the entire claim for damages." In the case of Sellards, etc. v. Zomes, 5 Bush 91, the court said: "The liability of joint trespassers is several, and any one or all of them may be sued for the entire wrong. Consequently, since our statute of 1836, authorizing several judgments, a dismission or release of one or more who are sued can not *per se* release the others."

In view of the fact that the $1,000 received from the Marsden Company was received only as part satisfaction of appellee's cause of action, and not in full satisfaction thereof, the appellee was not barred from proceeding further against appellant.

Wherefore the judgment of the lower court is affirmed, with damages.