## MILLER v. SPRING GARDEN INS. CO.

### (Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

#### No. 2,140.

**1. EVIDENCE (§ 455\*)—INSURANCE—POLICY—AMBIGUITY—PAROL EVIDENCE.**

Where a rider attached to a fire policy granted permission to make ordinary alterations and repairs, while the policy stipulated that it should be void if mechanics were employed in altering or repairing the premises for more than 15 days, the contract was ambiguous as to what constituted ordinary alterations and repairs and justified the admission of parol evidence that at the time the policy was solicited the contemplated repairs were fully explained to defendant's agents, and that they knew of the nature thereof, and what would be necessary to complete the repairs as contemplated.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2104; Dec. Dig. § 455.\*]

**2. INSURANCE (§ 129\*)—POLICY—ATTACHMENT OF RIDER—PURPOSE.**

Where a rider was attached to a fire policy authorizing ordinary alterations and repairs in order to permit repairs contemplated by the insured and explained to the agent who delivered the policy, plaintiff was entitled to assume that the insurer had knowledge of the contemplated repairs.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 180–182, 1849. 1850; Dec. Dig. § 129.\*]

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin. Judge.

Action by Jacob Miller against the Spring Garden Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On November 17, 1910, the defendant executed and delivered to the plaintiff a policy of insurance, insuring him for the term of one year from that date against all direct loss or damage by fire, in the sum of $5,000, on his stock of goods, wares, and merchandise while contained in his one and two story frame, shingled roof building, and additions adjoining and connecting, or in cellars or basements thereto. On January 2, 1911, the insured property was totally destroyed by fire. The present action was brought to recover the amount of the insurance. To the complaint two defenses were pleaded: First, that after the issuance and delivery of the policy the plaintiff, contrary to the terms thereof, kept, used and allowed gasoline on the premises described in the policy, and that thereby the policy was rendered void and of no force or effect; second, that between October 18, 1910, and January 2, 1911, plaintiff built on to the building described in the complaint an addition thereto 30 feet wide by 50 or 60 feet long, at an expense of about $5,000, and in so doing employed a mechanic and eight or ten laborers and assistants, changed the partitions and doors of the building, put in shelves and other permanent and temporary fixtures and improvements, whereby the policy was

---

rendered void. The policy provided that it should be void, unless otherwise provided by agreement indorsed thereon or added thereto, if the hazard were increased by any means within the control or knowledge of the insured, "or if mechanics be employed in building, altering or repairing the within described premises for more than 15 days at one time," or if gasoline were used or allowed on the premises. There was a typewritten slip, or rider, attached to the policy, which contains this provision: "Permission granted to effect other insurance; to make ordinary alterations and repairs; to burn kerosene of standard quality for lights, lamps to be filled during daytime only." The case was tried before the court without a jury. At the close of the case, the defendant moved for judgment, which motion was denied, and judgment was rendered for the plaintiff.

W. W. Hindman and Happy, Cullen, Lee & Hindman, all of Spokane, Wash., for plaintiff in error.

Cannon, Ferris & Swan and Edelstein & Weinstein, all of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Error is assigned to the admission of testimony as to conversations between the plaintiff and the insurance agent who procured the policy concerning the alterations that were being made in the plaintiff's building, and error is assigned to the conclusion of the court that the plaintiff had not violated the provisions of the policy by having carpenters and mechanics engaged in building the premises for a period of more than 15 days after the policy was executed and delivered, without the consent of the defendant, and in holding that the work done upon the building was ordinary alterations and repairs within the permission contained in the rider to the policy. At the time when the policy was issued, one Harvey was the local agent of the defendant at Spokane, and Rogers & Rogers were insurance agents and brokers representing certain other insurance companies at Spokane. Prior to the issuance of the policy, one Pool was an insurance solicitor representing Rogers & Rogers. He went to the plaintiff while the building was in progress in October, 1910, and solicited insurance. The plaintiff took a pencil, and showed him the alterations of the building which he was in the process of making. Afterwards, Mr. Rogers, of the firm of Rogers & Rogers, came to see the plaintiff, and in his conversation with the plaintiff the latter explained to him how he was changing and adding to the building. Rogers & Rogers placed all the insurance of the plaintiff's property that the companies they represented would carry, and then they applied to the defendant for insurance, and the defendant issued and delivered to Weidenbacher, their agent, the policy sued on in this action. Shortly after the issuance of the policy, Harvey sent in his daily report to the defendant's office at Seattle, in which report was shown the location of the building mentioned in the policy with reference to other buildings in that locality, and the statement was made that Harvey had personally inspected the risk, and that the building was three months old and in good repair. The testimony was that prior to the alterations the building was a two-story frame building 20 feet wide by 58 feet long; that the second story was used as a dance hall; that about the middle of October,

1910, mechanics and laborers were employed to make alterations therein; that the second story was converted into a hotel and rooming house, and was entirely remodeled and partitioned off into rooms, and new floors were put in; that the stairway which formerly was on the outside of the building was changed and placed within the building; that an addition 30 feet by 58 feet with a shingle roof was built on one side of the building; that certain walls or partitions were taken out of the first story; that shelvings were built on the inside walls; that a porch was built across the front of the building; that during the time of the alterations from three to ten men were employed, and the improvements cost from $4,500 to $5,000, and that the work was carried on continuously up to the date of the fire.

[1] The disposition of the case in this court depends upon the question of the admissibility of the oral testimony which was taken to show that the plaintiff fully explained to the insurance agents, and the latter understood, the nature of the alterations which were being made in the building and the time which would be necessarily taken in completing the same. Testimony of that nature was admitted by the court below as explanatory of an ambiguity in the policy, and we think it was properly so admitted. The defendant, after stipulating in the printed policy that the employment of mechanics in building, altering, or repairing the premises for more than 15 days should avoid the contract of insurance, attached to the policy a typewritten slip or rider, "Permission granted to make ordinary alterations and repairs." The fact that this provision was attached by a typewritten slip to the policy shows that it was to express the intention of the parties, and that the printed provision in regard to the employment of mechanics for more than 15 days did not express their intention. Having made one provision which limited the time of the employment of mechanics, and attached another special provision which made no limitation of time whatever, the question arose, what was meant by the second, and what were the "ordinary alterations and repairs" in the contemplation of the parties? No rule of evidence was violated by admitting testimony to show what that intention was, and what were the circumstances under which the rider was attached to the policy. In cases of doubt or ambiguity the negotiations between the parties are properly considered in giving construction to their agreement. Fire Insurance Co. v. Wickham, 141 U. S. 564, 576, 12 Sup. Ct. 84, 35 L. Ed. 860; Seitz v. Brewers R. M. Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; Lindblom v. Fallett, 145 Fed. 805, 76 C. C. A. 369; Lilienthal v. Cartwright, 173 Fed. 580, 97 C. C. A. 530; Kilby v. Hinchman-Renton Fire Proofing Co., 132 Fed. 957, 66 C. C. A. 67. And the language of the policy must be interpreted in the sense in which the insurer knew, or had reason to know, that the insured understood it. Said Mr. Justice Harlan in Thompson v. Phœnix Ins. Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019, 1023 (34 L. Ed. 408):

"If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company."

It was proper to show, therefore, that by the term "ordinary alterations" was meant the very alterations and changes which were then being made. The word "alterations" is an elastic one, and, if the parties so understood its use, it was proper to show their understanding by oral testimony.

[2] But it is urged that the defendant was not represented in or bound by the conversations which took place between the plaintiff and the agents of other insurance companies, and that it is bound only by the express terms of its written contract. But the defendant issued a policy which contained a rider which altered the terms of its policy. It was charged with the duty of ascertaining for what purpose that typewritten slip was attached to the printed contract. The plaintiff had the right to assume that the defendant knew for what purpose the rider was attached, for the policy was delivered through an agent who knew. Section 6191, 2 Rem. & Bal. Code of Washington, provides:

"Any person through whom any insurance company writing insurance upon any property in this state shall deliver a policy of insurance, shall be deemed the agent of such company as to all transactions relating to such insurance had between such person and the insured named in the policy prior to and at the delivery thereof."

We find no error. The judgment is affirmed.